```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


BOARD OF TRUSTEES,              )
SHEET METAL WORKERS'            )
NATIONAL PENSION FUND           )
                                )
     Plaintiff,                 )
                                )
          v.                    )    1:08cv15 (JCC)
                                )
DCI SIGNS & AWNINGS, INC.,      )
                                )
     Defendant.                 )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant DCI Signs & Awnings, Inc.'s 12(b)(6) Motion to Dismiss and Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund's Motion for Summary Judgment. For the following reasons, the Court will deny Defendant's Motion and deny Plaintiff's Motion.

### I. Background

The facts as alleged in the Complaint are as follows. The Sheet Metal Workers' National Pension Fund (the "Fund") is a multiemployer defined benefit pension plan that was created to provide retirement benefits for employees working in the sheet metal industry. The Fund was formed through an Agreement and Declaration of Trust (the "Trust Agreement") and is administered by the Board of Trustees ("Plaintiff"). Defendant DCI Signs & Awnings, Inc. ("Defendant") employed individuals represented for

1

the purposes of collective bargaining by the Sheet Metal Workers' International Association Local Union No. 137 ("SMW Local 137"). Defendant signed a collective bargaining agreement (the "CBA") with SMW Local 137, which obligated Defendant to abide by the terms and conditions of the Trust Agreement.  The provision of the Trust Agreement at issue in this case is Article VI, which provides that "[t]he Trustees [of the Fund] may, in their sole and absolute discretion, impose an 'Exit Contribution' . . . on any Employer who has a 'Triggering Event' on or after January 1, 2003."  *See* Trust Agreement, Art. VI, Ex. A to Def.'s Mot. to Dismiss.  Article VI states that a "Triggering Event" occurs when "the Employer ceases to have an obligation to contribute to the Fund on some or all of its Employees, but is not required to pay any withdrawal liability to the Fund under Title IV of ERISA as a result thereof."  *Id*.

On April 1, 2007, Defendant permanently ceased to have an obligation to contribute to the Fund, thereby withdrawing from it in a statutory "complete withdrawal" as defined in Section 4203 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383.  Plaintiff determined that as a result of this complete withdrawal Defendant incurred an Exit Contribution to the Fund under the terms of the Trust Agreement in the amount of $77,317.03.  On July 25, 2007, Plaintiff sent a Notice and Demand for payment of the Exit Contribution to

Defendant, demanding payment within 20 days of the letter. Defendant failed to make that payment.

Subsequently, on January 7, 2008, Plaintiff filed a Complaint against Defendant alleging a single count under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, for payment of the Exit Contribution as well as interest, liquidated damages, and attorneys' fees and costs.  On January 24, 2008, Defendant filed its Motion to Dismiss, and on February 7, 2008, Plaintiff filed its Motion for Summary Judgment.  These matters are currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)(citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007)(citation omitted).

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* (quotation omitted).  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the

non-moving party.  *Id*. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## III. Analysis

### A. Defendant's Motion to Dismiss

Defendant moves to dismiss on two grounds.  First, Defendant argues that Plaintiff's claim under Section 515 of ERISA necessarily fails given Plaintiff's affirmative allegation that Defendant permanently ceased to have an obligation to contribute to the Fund on April 1, 2007.  Second, Defendant contends that Plaintiff's effort to impose the Exit Contribution on Defendant is "a blatant attempt to circumvent the plain language of the law and impose withdrawal liability on an employer that is free from such liability as a matter of law." Def.'s Mem. of Law in Support of Mot. to Dismiss ("Def.'s Mem.") at 5.

Withdrawal under ERISA is determined by 29 U.S.C. § 1383(a), withdrawal liability is established by 29 U.S.C. § 1381, and 29 U.S.C. § 1390 governs the nonapplicability of withdrawal liability.  As the Court set out in Part I of this Opinion, Article VI of the Trust Agreement states that when an employer withdraws from the Fund and ceases to have an obligation to contribute to it, Plaintiff may impose an Exit Contribution on the employer if the employer is not required to pay any withdrawal liability.  *See* Trust Agreement, Art. VI, Ex. A to

5

Def.'s Mot. to Dismiss.  In other words, once an employer's obligation to make contributions to the Fund ends, Plaintiff may choose to impose a new obligation – an Exit Contribution – in circumstances where no withdrawal liability is owed. Importantly, the obligation to contribute discussed in Article VI refers to a duty to make regular, monthly contributions to the Fund.  Trust Agreement, Art. V, Ex. A to Def.'s Mot. to Dismiss ("[C]ontributions to the Fund shall be remitted monthly . . . .").

Plaintiff alleges in its Complaint that Defendant withdrew from the Fund within the terms of 29 U.S.C. § 1383(a) and Plaintiff elected to impose an Exit Contribution.  Pl.'s Compl. at ¶¶ 7-8.  Implicit here, though not explicitly stated, is that the Exit Contribution was assessed because Plaintiff had determined that Defendant did not owe any statutory withdrawal liability.  Contrary to Defendant's assertions, there is nothing inconsistent between the facts alleged in Plaintiff's Complaint and the imposition of the Exit Contribution pursuant to the terms of the Trust Agreement.  While Defendant's obligation to pay monthly contributions to the Fund ceased, and Defendant did not have any statutory obligation under ERISA to pay withdrawal liability, it did have a contractual obligation to pay any Exit Contribution that Plaintiff chose to impose.  Sections 502(g)(2)

6

and 515 of ERISA empower Plaintiff to seek the enforcement of this obligation.  *See* 29 U.S.C. §§ 1132(g)(2) and 1145.[1]

Defendant, however, asserts that the Complaint fails to allege that Defendant actually saw or signed the Trust Agreement or that Defendant had knowledge of it and expressly assented to its terms.  Instead, Defendant complains that the Trust Agreement is a "moving and evolving target, the terms of which were unknown" to Defendant, and that Defendant should not be bound by it.  Def.'s Reply in Support of Mot. to Dismiss ("Def.'s Reply") at 2-3.

"It is axiomatic in the law of contracts that, in order to incorporate a secondary document into a primary document, the identity of the secondary document must be readily ascertainable."  *Hertz Corp. v. Zurich American Ins. Co.*, 496 F. Supp. 2d 668, 675 (E.D. Va. 2007).  In order for the incorporated terms to have binding effect, the parties must have knowledge of and assent to the incorporated terms.  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996).  Additionally, incorporation cannot cause surprise or hardship.  *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003).

---

[1] Section 515 of ERISA provides that: "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.  Section 502(g)(2) provides the mechanism by which the fiduciary of a plan can enforce Section 515.  *Id.* § 1132(g)(2).

Here, Plaintiff alleges that Defendant "was a signatory to and bound by a collective bargaining agreement" with SMW Local 137 that "obligated [Defendant] to abide by the terms and conditions of the Trust Agreement establishing the Fund and any amendments thereto." Pl.'s Compl. at ¶ 6. Despite Defendant's objections, were Plaintiff to prove this set of facts – that Defendant signed a collective bargaining agreement that explicitly obligated it to abide by the terms and conditions of the Trust Agreement – Plaintiff would be entitled to recover the Exit Contribution under Sections 502(g)(2) and 515 of ERISA. The fact that the Complaint itself is not more detailed is not justification for granting a motion to dismiss. *See* Fed. R. Civ. P. 8(a); *Twombly*, __ U.S. __, 127 S. Ct. at 1964 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . .").

Defendant also moves for dismissal on the ground that the imposition of the Exit Contribution is prohibited by ERISA, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"). Defendant characterizes the Exit Contribution as, in effect, another form of withdrawal liability and a means by which the Fund can "squeeze additional money out of [Defendant] when ERISA provides no other avenue." Def.'s Reply at 5.

Defendant's argument fails for several reasons. First, as the Court previously stated, the Exit Contribution is not the

8

same thing as withdrawal liability. While withdrawal liability is mandated by statute, the Exit Contribution stems from a separate contractual obligation incurred by a withdrawing employer who does not owe statutory withdrawal liability. Thus, imposing the Exit Contribution in no way conflicts with 29 U.S.C. § 1390, the ERISA provision governing the nonapplicability of withdrawal liability. Second, ERISA and the MPPAA establish minimum, not maximum, rules governing employee benefit plans, and do not preclude an employer from agreeing to pay a fee for withdrawal other than statutory withdrawal liability. For example, though ERISA mandates that vested pension benefits cannot be reduced by plan amendment, "[e]mployers or other plan sponsors are generally free . . . for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). This language plainly indicates that ERISA does not prohibit employers from agreeing, if they so choose, to increase obligations beyond the statutory floor. The Fourth Circuit's decision in *Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989) further supports this notion. In *Keffer*, the Court found that the question of whether an employer's obligation to provide benefits to its retirees or their surviving spouses continued beyond the expiration of the collective bargaining agreement was a question of "the parties' intent as expressed in their agreement." *Id.* at 62. In finding that the employer did intend to undertake such an obligation, the

9

Court reinforced the idea that ERISA sets a statutory floor that does not supplant parties' abilities to contract above the required minimums.  *Id.* at 65.

MPPAA withdrawal liability provisions impose similar statutory baselines that do not prohibit parties from tacking on additional obligations.  Congress's purpose in enacting the MPPAA, as evidenced by the First Circuit, is consonant with this interpretation:

> Before the MPPAA was enacted, a significant number of multiemployer pension plans were in danger of financial collapse. *Pension Benefit Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 721 (1984).  Existing law aggravated the problem by creating unintended incentives for employers to withdraw from these troubled plans to avoid future liability.  The MPPAA was designed to eliminate those incentives for withdrawal and to strengthen multiemployer plans so that employees and their beneficiaries would not be deprived of anticipated retirement benefits.  *Id.* at 720, 722-23.  Congress believed that plan beneficiaries should have the right to rely on the continued solvency of the plans, and that the viability of such plans should not be put unnecessarily at risk by subjecting them to lengthy delays in their ability to collect withdrawal liability payments.

*Debreceni v. Merchants Terminal Corp.*, 889 F.2d 1, 4 (1st Cir. 1989).  Given Congress's clear intent to improve the financial solvency of multiemployer pension plans, reading the MPPAA to limit the ability of plans like the Fund to improve their financial situation by requiring withdrawing employers to provide Exit Contribution where they do not otherwise have any withdrawal liability is incoherent.

10

In sum, the Court finds that Plaintiff has sufficiently pled facts stating a claim against Defendant under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, and further finds that Defendant's arguments for dismissal are without merit.  The Court therefore will deny Defendant's Motion to Dismiss.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on the grounds that: (1) Defendant, by agreeing to the CBA, contractually bound itself to pay an Exit Contribution as set out in Article VI of the Trust Agreement; and (2) Defendant owes an Exit Contribution of $77,317.03, the payment of which is enforceable under Sections 502(g)(2) and 515 of ERISA.  Pl.'s Mem. in Support of its Mot. for Summ. J. ("Pl.'s Mem.") at 8-9, 13-14.  As a threshold matter, the Court notes that many of the undisputed facts in this case were previously set forth in Part I of the Court's Opinion, and they need not be rehashed here.[2]  However, to the extent that there are undisputed facts before the Court on summary judgment that were not before the Court on the Motion to Dismiss, the Court will outline them now.

The CBA at issue in this case was in effect from March 1, 2005 to March 31, 2007.  Declaration of Alex Dyer ("Dyer Decl.") at ¶¶ 8-9.  In addition to signing the CBA, Defendant

---

[2] The Court further notes that any facts in Part I that were taken from the Complaint are substantiated by the Declaration of Alex Dyer.  *See* Declaration of Alex Dyer at ¶¶ 1-22.

11

also signed a Participation Agreement entitled "Sheet Metal Workers National Pension Fund Plan B," which specified the terms of Defendant's participation in the Fund and was expressly incorporated into the CBA.  *Id.* at ¶ 10; CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.  Paragraphs 1(B) and (D) of the Participation Agreement required Defendant to make monthly contributions to the Fund for hours paid to Defendant's employees, and dictated that the contributions would be made "at such time and in such manner[] as the Trustees require."  Dyer Decl. at ¶ 11; CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.  In addition, Paragraph 1(D) of the Participation Agreement states that: "[t]he payments to the [Fund] required above shall be made to the 'Sheet Metal Workers' National Pension Fund' which was established under an Agreement and Declaration of Trust, a copy of which has been signed by the Employer in the place provided at the end of such Agreement."  Dyer Decl. at ¶ 12; CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.

Defendant offers several reasons why summary judgment is not appropriate.  First, Defendant argues that summary judgment should be denied because there has been no opportunity for discovery.  Generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).  However, "[i]f a party believes that more discovery is necessary for it to

12

demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)(quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). The Fourth Circuit has taken the Rule 56(f) affidavit requirement seriously, holding that "'the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Id.* (quoting *Evans*, 80 F.3d at 961).  Nevertheless, the Fourth Circuit has allowed a discovery request to be made in a legal memorandum rather than in a Rule 56(f) affidavit "when fact-intensive issues, such as intent, are involved" and "if the non-moving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* (quoting *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Here, Defendant did not submit a Rule 56(f) affidavit. As a result, its argument for discovery may be sustained only if one of the abovementioned exceptions applies.  Defendant's case for an exception is identical to its second, broader argument against summary judgment: Defendant is not bound by the Trust Agreement because the Trust Agreement was not readily ascertainable and Defendant did not assent to its terms.

13

Defendant insists that at the time the CBA was executed it had not received a copy of the Trust Agreement, had never seen the document, and neither knew of nor intended to agree to its provisions.  *See* Declaration of Danny Castillo ("Castillo Decl."), Ex. 1 to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n") at ¶¶ 6-8.  Consequently, Defendant argues, it was never aware of the Exit Contribution provision of the Trust Agreement and never consented to it.  Defendant contends that discovery should be allowed in order to determine whether Defendant was in fact presented with and signed the Trust Agreement.

Plaintiff, relying on the doctrine of quasi-estoppel, insists that because Defendant represented in Paragraph 1(D) of the Participation Agreement that it had reviewed and signed the Trust Agreement, *see* CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33, Defendant cannot now claim that it did not do so.  The doctrine of quasi-estoppel provides that a party cannot "accept[] the benefits of a transaction or statute and then subsequently tak[e] an inconsistent position to avoid the corresponding obligations or effects."  *Robb-Fulton v. Robb (In re Robb)*, 23 F.3d 895, 898 (4th Cir. 1994); *see also Ritter v. Ulman*, 78 F. 222, 223-24 (4th Cir. 1897).  In situations involving contracts, this doctrine is known as estoppel by contract, which "forbids a party to a contract from taking a position inconsistent with the terms of the contract when that position prejudices another."  *Lozano v.*

14

*Ocwen Fed. Bank, FSB*, 489 F.3d 636, 639-40 (5th Cir. 2007).  As the *Lozano* Court described it:

> [t]he doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he accepted a benefit.  In other words, the doctrine forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects.

*Id.* at 640 (citations and internal quotation marks omitted).

While the Court sees some merit to this argument, it nevertheless finds that the question of whether Defendant was presented with, signed, and assented to the terms of the Trust Agreement is a disputed question of material fact that renders summary judgment inappropriate.  Additionally, while Defendant did not properly present a Rule 56(f) affidavit detailing precisely why it needed discovery to properly oppose a motion for summary judgment, Defendant's presentation in its brief of the fact-intensive question regarding its consent "served as the functional equivalent of an affidavit."  *See Harrods*, 302 F.3d at 244.  Consequently, the Court will deny Plaintiff's motion for summary judgment in order to permit further discovery with respect to this issue.

## IV. Conclusion

For these reasons, the Court will deny Defendant's 12(b)(6) Motion to Dismiss deny Plaintiff's Motion for Summary Judgment.

An appropriate Order will issue.


March 5, 2008                         _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                      UNITED STATES DISTRICT COURT JUDGE