```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA

                    Alexandria Division


BOARD OF TRUSTEES,              )
SHEET METAL WORKERS'            )
NATIONAL PENSION FUND,          )
                                )
       Plaintiff,               )
                                )
            v.                  )     1:08cv15 (JCC)
                                )
DCI SIGNS & AWNINGS, INC.,      )
                                )
       Defendant.               )
```

## M E M O R A N D U M   O P I N I O N

_____        This matter is before the Court on Defendant DCI Signs
& Awnings, Inc.'s Motion for Summary Judgment and Plaintiff Board
of Trustees, Sheet Metal Workers' National Pension Fund's Second
Motion for Summary Judgment.  For the following reasons, the
Court will deny Defendant's Motion and deny Plaintiff's Motion.

### I. Background

        The facts as alleged in the Complaint are as follows.
The Sheet Metal Workers' National Pension Fund (the "Fund") is a
multi-employer defined benefit pension plan that was created to
provide retirement benefits for employees working in the sheet
metal industry.  The Fund was formed through an Agreement and
Declaration of Trust (the "Trust Agreement") and is administered
by the Board of Trustees ("Plaintiff").  Defendant DCI Signs &

1

Awnings, Inc. ("Defendant") employed individuals represented for the purposes of collective bargaining by the Sheet Metal Workers' International Association Local Union No. 137 ("SMW Local 137"). Defendant signed a collective bargaining agreement (the "CBA") with SMW Local 137, which obligated Defendant to abide by the terms and conditions of the Trust Agreement.  The provision of the Trust Agreement at issue in this case is Article VI, which provides that "[t]he Trustees [of the Fund] may, in their sole and absolute discretion, impose an 'Exit Contribution' . . . on any Employer who has a 'Triggering Event' on or after January 1, 2003."  *See* Trust Agreement, Art. VI, Ex. A to Def.'s Mot. to Dismiss.  Article VI states that a "Triggering Event" occurs when "the Employer ceases to have an obligation to contribute to the Fund on some or all of its Employees, but is not required to pay any withdrawal liability to the Fund under Title IV of ERISA as a result thereof."  *Id*.

On April 1, 2007, Defendant permanently ceased to have an obligation to contribute to the Fund, thereby withdrawing from it in a statutory "complete withdrawal" as defined in Section 4203 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383.  Plaintiff determined that as a result of this complete withdrawal Defendant incurred an Exit Contribution to the Fund under the terms of the Trust Agreement in the amount of $77,317.03.  On July 25, 2007, Plaintiff sent a

Notice and Demand for payment of the Exit Contribution to Defendant, demanding payment within 20 days of the letter. Defendant failed to make that payment.

Subsequently, on January 7, 2008, Plaintiff filed a Complaint against Defendant alleging a single count under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, for payment of the Exit Contribution as well as interest, liquidated damages, and attorneys' fees and costs. On January 24, 2008, Defendant filed its Motion to Dismiss, and on February 7, 2008, Plaintiff filed its Motion for Summary Judgment. The Court denied both of these motions on March 5, 2008.

On July 29, 2008, Plaintiff filed its second Motion for Summary Judgment. Defendant filed its own Motion for Summary Judgment on August 1, 2008. These matters are currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the

3

absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* (quotation omitted).  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

The Court notes that discovery has established additional undisputed facts.  The CBA at issue in this case was in effect from March 1, 2005 to March 31, 2007.  Declaration of Alex Dyer ("Dyer Decl.") at ¶¶ 8-9.  In addition to signing the CBA, Defendant also signed a Participation Agreement entitled "Sheet Metal Workers National Pension Fund Plan B," which specified the terms of Defendant's participation in the Fund and was expressly incorporated into the CBA.  *Id.* at ¶ 10; CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.  Paragraphs 1(B) and (D) of the Participation Agreement required Defendant to make monthly contributions to the Fund for hours paid to Defendant's employees, and dictated that the contributions would be made "at

4

such time and in such manner[] as the Trustees require." Dyer
Decl. at ¶ 11; CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.  In
addition, Paragraph 1(D) of the Participation Agreement states
that: "[t]he payments to the [Fund] required above shall be made
to the 'Sheet Metal Workers' National Pension Fund' which was
established under an Agreement and Declaration of Trust, a copy
of which has been signed by the Employer in the place provided at
the end of such Agreement."  Dyer Decl. at ¶ 12; CBA, Ex. A to
Pl.'s Mot. for Summ. J. at 33.

       In addition, Defendant has stated, and Plaintiff has
stipulated that, for purposes of summary judgment, "[Defendant]
was not presented with, did not receive, and did not actually
sign a copy of the Fund's Trust Agreement."  Pl.'s Mot. for Summ.
J. at 8.  The Court will discuss each party's motion for summary
judgment in turn.

## A.   Defendant's Motion for Summary Judgment

       Defendant puts forth four arguments in support of its
Motion for Summary Judgment.  First, Defendant argues that the
Trust Agreement is not binding on Defendant because it was not
properly incorporated into the CBA.  Second, Defendant argues
that it is relieved of its obligation to pay the Exit
Contribution under the doctrine of contractual mistake.  Third,
Defendant argues that the Exit Contribution is an unenforceable
penalty under Virginia contract law.  Finally, Defendant submits

5

that Plaintiff is not entitled to the damages provided for by §
502(g)(2) of ERISA because the Exit Contribution is strictly
contractual in nature and independent of ERISA obligations.

1)   <u>Whether Defendant is Bound to the Trust Agreement
because that Agreement was Properly Incorporated
into the CBA</u>

In support of its first argument, Defendant argues that
the Trust Agreement was not properly incorporated into the CBA
because the references to it did not refer to "incorporation."
Defendant also argues that the Trust Agreement itself was not
identified with sufficient specificity to be incorporated by
reference because the applicable version of the Trust Agreement
was not identified.

Plaintiff responds that incorporation by reference is
not necessary for Defendant to be bound by the terms of the Trust
Agreement under *Hertz*.  Pl.'s Mot. for Summ. J. at 5 (citing in
*Hertz v. Zurich Am. Ins. Co.*, 496 F.Supp.2d 668, 675 (E.D. Va.
2007)).  It also argues that the Trust Agreement was sufficiently
identified in the CBA to be incorporated, even though the
specific version is not identified, because it obviously refers
to the version of the Trust Agreement in effect at that time.
Pl.'s Reply in Supp. at 4.

To accomplish an incorporation by reference, "[t]he
language used is not important provided that the document signed

6

by the defendant plainly refers to another writing." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968).  To determine whether the two agreements were in fact separate contracts, or one interrelated contract, "[i]t is well settled that the factors to be considered in answering this question are: the time and place of acceptance, the time and place of performance, and the character of the performance." *U.S. for Use and Benefit of Trane Co. v. Raymar Contracting Corp.*, 295 F.Supp. 234, 236 (D.C.N.Y. 1968) (citing Corbin, Contracts § 696 (rev. ed. 1961)).  In this case, both the Trust Agreement and the CBA were to be performed at a similar time in a similar manner.  If the Trust Agreement was accepted by Defendant, it was accepted at the same time and place as the CBA.  Defendant and Plaintiff dispute whether the Trust Agreement was accepted.

Incorporation by reference also requires the document incorporated to be sufficiently named and easily identifiable. *Hertz*, 496 F.Supp.2d at 675-76.  The CBA identifies the Trust Agreement as the document which created the Fund and as a document which Defendant has signed.  *See* CBA, Ex. C to Def.'s Mot. for Summ. J. at 33.  Defendant points out that the document that established the fund is different from the Amended and Restated Version that Plaintiff seeks to enforce against Defendant.  Def.'s Reply in Supp. at 2.  Further, the reference to the Trust Agreement that Defendant signed provides no

7

additional means of identification because Defendant never actually signed or saw any version of the Trust Agreement.

Plaintiff responds by noting that courts regularly find that contracts adopt the version of an incorporated document in effect at the time of execution.  Pl.'s Reply in Supp. at 2 (citing *Dart Advantage Warehousing, Inc. V. United States*, 52 Fed. Cl. 694, 705 (Fed. Cl. 2002); *Illyes v. John Nuveen & Co.*, 949 F. Supp. 580, 582 (N.D. Ill. 1996)).  Plaintiff argues that the terms of the CBA are not ambiguous in this matter because it is not "susceptible of two reasonable interpretations," *id.* (citing *Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979)), and "courts are forbidden to 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity,'" *id.* (citing *Megatech, Inc. v. NSD Acquisitions LP*, 200 U.S. App. LEXIS 12308, at *5-6 (4th Cir. 2000)).

The Court finds Defendant's argument persuasive regarding the failure of the CBA to incorporate the terms of the Trust Agreement by reference because the Trust Agreement document was not identified with sufficient specificity.  First, while other courts have found that various contracts incorporate the version of a document in effect at the time of execution, this is not a mandatory rule of construction.  Second, the Court finds that the provision of the CBA relating to the Trust Agreement is, in fact, susceptible to two reasonable interpretations.  One

8

interpretation is that the CBA refers to the version of the Trust Agreement that "established" the Fund.  A second interpretation is that it refers to the version in effect at the time of the CBA's execution.  The existence of two reasonable interpretations, one advocated by each party makes summary judgment on this ground inappropriate.

In an alternative argument, Defendant submits that the facial terms of the CBA do not establish that Defendant consented to be bound to the Trust Agreement.  According to Defendant, the language in the CBA referring to the Trust Agreement only establishes that the Fund was established under the Trust Agreement and that the Employer has signed the Trust Agreement, but gives no context for why the document was signed by the Employer and does not establish that the Employer will be bound by all of its terms.

*Hertz* makes it clear that a party may be bound by terms incorporated into a contract by reference or to terms to which the party manifested an intent to be bound, even in the absence of proper incorporation.  496 F. Supp. 2d at 675-77.  The parties dispute whether signing the CBA constitutes such a manifestation. Plaintiff argues that the obvious purpose of signing a document is to bind oneself to its terms.  Further, it argues that Defendant's "negligence in not reading an underlying contract does not relieve a party of liability."  Pl.'s Mot. for Summ. J. at 11.

9

The threshold inquiry into whether a term is ambiguous is a legal question, while the actual interpretation of an ambiguous term is a factual question. *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993). An ambiguous contract clause is a genuine issue of material fact where a rational fact finder could come to more than one conclusion. *Id.* at 137.

In this case, the parties dispute the meaning of the provision of the CBA referring to the Trust Agreement and whether that provision constitutes a manifestation of intent to be bound by the Trust Agreement. As stated above, the Court finds that the provision of the CBA relating to the Trust Agreement is susceptible to two reasonable interpretations. The existence of two reasonable interpretations, one advocated by each party makes summary judgment on the issue of whether Defendant is bound by the terms of the Trust Agreement by virtue of its signature on the CBA inappropriate at this time. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

Finally, Defendant argues that it is not bound by the Trust Agreement by means of its signature to the CBA because the only reference in the CBA to the Trust Agreement was essentially a false statement. The CBA states that the Trust Agreement was "signed by the Employer in the place provided at the end of such

10

Agreement." CBA, Ex. C to Def.'s Mot. For Summ. J. at 33. As alleged by Defendant and stipulated by Plaintiff, Defendant neither saw nor signed the Trust Agreement itself. Pl.'s Mot. for Summ. J. at 8.

In response, Plaintiff maintains that it is entitled to rely on and enforce the facial terms of the CBA under ERISA § 515, regardless of their truth or falsity. Plaintiff argues that Congress, through this section of ERISA, has "placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course." Pl.'s Mot. for Summ. J. at 13 (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990)).

"Because an employer's obligation to a multiemployer plan usually arises through a collective bargaining agreement negotiated and agreed to by the employer and union, the multiemployer plan is . . . a third party beneficiary of the collective bargaining agreement." *Bakery and Confectionery Union and Industry Intern. Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997). A third party beneficiary "can enforce the terms of a contract that inure to its benefit, but is subject to defenses that the promisor could assert against the original party to the contract." *Id.*

Congress added § 515 to ERISA in order to strengthen the position of these multiemployer plans "by holding employers and unions to the literal terms of their written commitments."

11

*Bakery and Confectionery Union*, 118 F.3d at 1021-22.  Under §
515, "[a]n employer is not permitted to raise defenses that
attempt to show that the union and the employer agreed to terms
different from those set forth in the agreement." *Id.* (citing
*Cent. States Se. and Sw. Areas Pension Fund v. Gerber Truck
Serv.*, 870 F.2d 1148 (7th Cir. 1989) (refusing to enforce an oral
agreement between employer and union).  An employer is also not
permitted to "raise defenses that relate to claims the employer
may have against the union." *Id.* (citing *Agathos v. Starlite
Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (fraud in the
inducement); *Bituminous Coal Operators' Ass'n, Inc. v. Connors*,
867 F.2d  635, 632-36 (D.C. Cir. 1989)(mistake of fact)). Section
515 does not mean, however, that multiemployer funds may "enforce
a nonexistent contractual obligation." *Id.* (citing *Teamsters
Indus. Employees Welfare Fund*, 989 F.2d at 138).

        The Court finds that Defendant's argument regarding the
falseness of the CBA's reference to the Trust Agreement fails to
establish that the Defendant cannot be obligated under the Trust
Agreement because it does not take into account the effect of
Section 515 of ERISA on third-party multiemployer benefit plans'
rights to enforce collective bargaining agreements.  However,
while the "special status of multiemployer funds allows them to
rely on the unambiguous written agreements presented to them,"
*id.* (citing *Benson*, 907 F.2d at 313-14), it does not

                                12

automatically resolve ambiguities in the funds' favor.  Thus,
summary judgment on this issue is not appropriate at this time
because the Court finds that the provision of the CBA relating to
the Trust Agreement is susceptible to two reasonable
interpretations.

   2) <u>Whether the Doctrine of Mistake Relieves Defendant
     of Potential Liability under the Trust Agreement</u>

   Defendant argues that it is relieved of its obligation
to pay the Exit Contribution under the doctrine of contractual
mistake.  Defendant relies on § 153 of the Restatement (Second)
of Contracts to argue that any contract is voidable by Defendant
because Defendant does not bear the risk of the mistake as to the
Trust Agreement's terms and Plaintiff had reason to know of
Defendant's mistake.  Defendant argues that Plaintiff knew of
Defendant's failure to read or sign the Trust Agreement because
Plaintiff's practice is to only provide copies of the Trust
Agreement upon request.  As Defendant had never requested a copy
of the Trust Agreement, the Plaintiff therefore knew that
Defendant had not signed it.

   Plaintiff disputes these conclusions, stating that it
only became aware of Defendant's failure to sign during discovery
because "the local unions usually provide copies of the Trust
Agreements when Employers first sign [the] CBA."  Pl.'s Opp'n To
Def.'s Mot. for Summ. J. at 2.  Plaintiff also argues that
Defendant does not qualify for relief under the doctrine of

mistake because Defendant bore the risk of his mistake under Restatement (Second) of Contracts § 154(b). That section allocates the risk of a mistake to a party who treats his own limited knowledge as sufficient. According to Plaintiff, because Defendant admittedly failed to read the entire CBA and to seek assistance in reading it, Defendant was negligent and bears the risk of any resulting mistake. Plaintiff also argues that, under Restatement (Second) of Contracts, § 155, a party cannot obtain relief for mistake where correcting the mistake would unfairly affect the rights of an innocent third-party. This section, however, applies to cases of mutual mistake, which this is not.

Defendant's defense of mistake fails because it is a well-settled principle of contract law that one who treats his limited knowledge as sufficient bears the risk that that limited knowledge is insufficient. *McDevitt & Street Co. v. Marriott Corp.*, 713 F.Supp. 906, 917-18 (E.D. Va. 1989). Defendant admits that it did not read the CBA in its entirety nor seek the assistance of anyone in reading it. There are no assertions that Defendant was incapable of reading or understanding the CBA. It remains disputed whether Plaintiff knew or had reason to know of Defendant's mistake, but this is irrelevant in light of the fact that Defendant bore the risk of his mistake. Further, in light of the discussion of § 515 of ERISA in Section III.A.1 above, unilateral mistake is not a defense available in this type of

14

case brought by a third party multiemployer pension fund. *Bakery and Confectionery Union*, 118 F.3d at 1021-22.

> 3)   Whether the Exit Contribution is an Unenforceable Penalty

Defendant's third argument is that the Exit Contribution is an unenforceable penalty because it does not satisfy Virginia's requirements for liquidated damages clauses. Under *Perez v. Capital One Bank*, a liquidated damages clause is enforceable only if actual damages are difficult to measure at the time of the contract and "the fixed amount of damages is not out of all proportion to the probable loss." Def.'s Mot. for Summ. J. at 13 (quoting *Perez*, 258 Va. 612, 616 (Va. 1999)).

Plaintiff argues that Virginia law is irrelevant because the CBA and Trust Agreement are governed by federal common law under *Allis-Chalmers v. Lueck*, 471 U.S. 202, 209 (1985). It also submits that DCI has failed to make any showing that the Exit Contribution is disproportionate, but merely argues that any penalty is disproportionate. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 8.

The Court finds that the existence of and terms of the contract are governed by federal common law under *Allis-Chalmers*, 471 U.S. 202; however, the same standard for liquidated damages applies under federal common law, *see* Restatement (Second) Contracts § 356. Stipulated damages are generally enforced if

15

the damages are indeterminable at the time of contracting and "the amount agreed upon is not unconscionable, is not . . . an illegal penalty, and is not otherwise violative of public policy." Willston on Contracts § 65:1.  A liquidated damages provision violates public policy when it is intended to punish a party for breach or seeks to coerce performance of the underlying agreement by penalizing non-performance. *Bakery and Confectionery Union*, 118 F.3d at 1021–22.  In such cases the clause actually constitutes a penalty, which is generally unenforceable. *Id.*

The parties additional arguments were confined to whether any amount of Exit Contribution is an illegal penalty and did not provide facts regarding whether Plaintiffs' actual damages were difficult to measure or whether the amount of the Exit Contribution assessed on Defendant was unconscionable.  The Court finds that there are insufficient facts from which to determine whether the Exit Contribution is a liquidated damages clause, a penalty, or something else entirely, since it is imposed upon an employer's failure to renew a contract, not a breach of contract.  Summary judgement on this issue would be inappropriate at this time.

4)    Whether Defendant is Subject to Additional Damages
      Under § 502(g)(2)

Finally, Defendant argues that Plaintiff is not entitled to additional damages required under ERISA § 502(g)(2), 29 U.S.C. 1132(g)(2), because the Exit Contribution is contractual in nature and independent of ERISA.  The Court has already addressed this issue in its Memorandum Opinion dated March 5, 2008.  At that time, the Court found that Plaintiff had stated a federal ERISA claim under sections 515 and 502(g)(2) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2).  Mem. Op. at 11 [25] ("Plaintiff has sufficiently pled facts stating a claim against Defendant under Sections 515 and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145.").  If Plaintiff's ERISA claim is successful, it will be entitled to the mandatory damages that Congress included in ERISA's enforcement scheme.

**B. Plaintiff's Motion for Summary Judgment**

Plaintiff makes two main arguments in support of its motion for summary judgment:  first, that Defendant is bound to the Trust Agreement because it objectively manifested its intent to be bound by signing the CBA, and second, that Defendant is estopped from arguing that it did not actually sign the Trust Agreement under the doctrine of quasi-estoppel.  Pl.'s Mem. for Summ. J. at 10-14.

17

1)   <u>Whether Defendant's Act of Signing the CBA was an</u>
<u>Objective Manifestation of Defendant's Intent to</u>
<u>be Bound by the Terms of the Trust Agreement</u>

Plaintiff argues that Defendant entered into the Trust Agreement, even though it did not sign the Trust Agreement document itself, by signing the CBA, which included a provision stating that Defendant had signed the Trust Agreement.  In support of this point, Plaintiff submits that signing the CBA was an objective manifestation of Defendant's intent to enter into the Trust Agreement and that Defendant's failure to read the CBA carefully, which resulted in its lack of knowledge regarding the existence of and its obligations under the Trust Agreement, does not relieve Defendant of these obligations.  *Id.* at 11.

Plaintiff submits that Defendant's subjective intent not to enter into an agreement referenced in the CBA is irrelevant to the formation of a valid contract because intent to enter a contract is interpreted using an external or objective standard for interpreting conduct.  Pl.'s Mot. for Summ. J. at 10 (citing the Restatement (Second) of Contacts, § 2 cmt. b).

Defendant asserts that its signature on the CBA was not an objective manifestation of intent to enter into the Trust Agreement because the language of the CBA was not specific enough to give notice that signing the CBA obligated the signor under the CBA and the Trust Agreement.

18

Plaintiff argues that Defendant was negligent in failing to read the CBA, and that a contracting party is presumed to have read the terms of the contracts he signs.  Pl.'s Reply in Supp. at 4 (*citing First Va. Bank-Colonial v. Masri*, 428 S.E.2d 903, 904 (Va. 1993).  Defendant responds that its admitted failure to carefully read the terms of the CBA is not relevant here because even a close reading would not alert the reader to the fact that it would be bound by the Terms of the Trust Agreement.

As discussed above in Section III.A.1, the Court finds that the provision of the CBA referring to the Trust Agreement is susceptible to two reasonable interpretations.  Thus, summary judgment on this ground is not appropriate.

> 2)   Whether the Doctrine of Quasi-Estoppel Determines Defendant's Liability Under the Trust Agreement

Plaintiff maintains that Defendant is estopped from arguing that it is not subject to the terms of the Trust Agreement under the doctrine of quasi-estoppel.  This doctrine "forbids a party to a contract from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects."  Pl.'s Mot. for Summ. J. at 14 (quoting *Robb-Fulton v. Robb* (*In re Robb*)), 3 F.3d 895, 898-899 (4th Cir. 1994).

19

Plaintiff states that it permitted Defendant to participate in the Fund based on Defendant's representation in the CBA that it had signed the Trust Agreement.  Plaintiff also alleges that, based on Defendant's participation in the Fund, Defendant's "employees earned valuable benefits as compensation for their labor for [Defendant]."  Pl.'s Mot. for Summ. J. at 14. Under quasi-estoppel, after accepting the benefits of the Fund, Defendant is "now estopped from claiming that [it] was not a party to the Trust Agreement, regardless of whether or not it actually signed the Trust."  *Id.*

Defendant maintains that the doctrine of quasi-estoppel does not apply here because Defendant had no knowledge of the alleged obligation, the Exit Contribution.  Def.'s Mem. in Opp'n at 14-15.  Although quasi-estoppel is recognized by the Fourth Circuit, Defendant argues that it has only been applied where the defendants were actually aware of their obligations or the obligations were foreseeable.  *Id.* (citing *In re Robb*, 23 F.3d at 898; *Ritter v. Ulman*, 78 F. 222, 223-24 (4th Cir. 1897); *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 639-40 (5th Cir. 2007)).

Plaintiff responds that knowledge is not a required element of estoppel by contract, but even if it were, Defendant had notice of the Trust Agreement because the CBA referred to it. Pl.'s Reply in Supp. at 3 (citing *In re Robb*, 23 F.3d at 898;

20

*Kaneb Serv. Inc. v. Fed. Sav. & Loan Ins. Corp.*, 650 F.2d 78, 81 (5th Cir. 1981)).

The doctrine of estoppel by contract, also known as quasi-estoppel, "may be used to prevent a party from denying the existence of a contract where the material terms of the contract have been agreed upon," or where a party has not signed a contract but "has nonetheless manifested consent by performing under it and making payments conforming to its terms."  C.J.S. *Estoppel* § 70.

In this case, it is not clear whether Defendant agreed to be bound to the Trust Agreement by entering into the CBA, given the ambiguity in the CBA discussed above in section III.A.1.  It is also not clear whether Defendant "manifested consent by performing under" the Trust Agreement, given that all the details regarding Defendant's payments to the Fund were set forth in the CBA, not the Trust Agreement, *see* CBA, Ex. A to Pl.'s Mot. for Summ. J. at 33.

More importantly, while the parties have not raised the issue, this Court has serious doubts regarding whether the doctrine of quasi-estoppel can be applied in this ERISA action. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute."  ERISA § 514(a), 29 U.S.C. § 1144(a); *see also Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390-91

21

(9th Cir. 1995) ("state law claims of estoppel, waiver, breach of contract, quasi estoppel, and bad faith . . . 'relate to' an 'employee welfare benefit plan' because they represent attempts to recover benefits allegedly owed under the plan," and are thus preempted by ERISA) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)); *Rhorer v. Raytheon Eng'rs and Constr., Inc.*, 181 F.3d 634, 644 n.13 (5th Cir. 1999). Because of these difficulties, the Court finds that it need not discuss whether knowledge is a requirement for quasi-estoppel, and also finds that summary judgment in the Plaintiff's favor by virtue of quasi-estoppel is not appropriate.

## IV. Conclusion

For these reasons, the Court will deny Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.


An appropriate Order will issue.


September 15, 2008                 _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE


_____